UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Darren Dailey,                                  Case No. 3:12-cv-504

            Plaintiff

v.                                           MEMORANDUM OPINION
                                            AND ORDER

Accubuilt, Inc. et al.,

            Defendants

## INTRODUCTION

Before me are the motions of Defendants Accubuilt, Inc., and United Automobile, Aerospace and Agricultural Implement Workers of America, Local 975, for summary judgment pursuant to Rule 56. (See Doc. No. 28 and 30). Plaintiff Darren Dailey filed a memorandum in opposition. (Doc. No. 33). Accubuilt and Local 975 each filed briefs in reply. (Doc. No. 42 and 41). For the reasons stated below, the Defendants' motions are granted.

## STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may

meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25.

Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (*quoting* Fed. R. Civ. P. 56(e)). Rule 56 "requires the [non-moving] party to go beyond the pleadings" and present some evidence in support of its position. *Celotex*, 477 U.S. at 324; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). The non-moving party "need only present evidence from which a jury might return a verdict in his favor" in order to establish a genuine dispute as to a material fact. *Anderson*, 477 U.S. at 257. Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In considering a motion for summary judgment, a court "must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (*citing 60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). "At the summary judgment stage[,] the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Ultimately, a court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

## BACKGROUND

From January 18, 1993, until March 1, 2011, Dailey was employed by Accubuilt, most recently as a welder. (Doc. No. 1 at 2; Doc. No. 33 at 5). Local 975 became the exclusive bargaining representative for certain employees at Accubuilt, including Dailey, in approximately the

year 2000. (Id.). In January 2010, Dailey was seriously injured in a work accident and was unable to return to work for approximately 51 days. (Doc. No. 25 at 8-9). Upon his return to work, Dailey was placed in a light duty position in compliance with his medical restrictions, and remained in this position until Accubuilt terminated his employment. (Doc. No. 33 at 6). During this time, Dailey was permitted "to leave work as needed to attend physical therapy, time for which he was paid." (Id.). Though he punched a time clock during most of his employment with Accubuilt, Dailey was instructed to fill out time sheets tracking and describing his work hours after he returned to work following his injury. (Id.).

In February 2011, Kay Siudzinski, then the director of human resources for Accubuilt, began an investigation into the amount of time Dailey entered on his time sheet relating to his therapy visits. (Doc. No. 33 at 6). At the same time, Siudzinski instructed Dailey to begin scheduling his therapy appointments outside of his normal work hours.[1] (Id.). As part of her review of Dailey's time sheets, Siudzinski created a spreadsheet, estimating the amount of time "she felt was 'acceptable'" for Dailey to be away from work for therapy. (Doc. No. 33 at 7). Siudzinski allotted time for "each therapy session, drive time and lunch break" and concluded Dailey "willingly falsif[ied] company records" by including hours on his time sheet when he neither was at therapy nor at work. (Doc. No. 25-11 at 1).

Siudzinski held a meeting with Dailey to discuss her review of his time sheets; Tim Keiber (currently the Vice President of Operations at Accubuilt), Adam Rayl (chairman of Local 675 at Accubuilt), and Angie Truesdale (Local 975 secretary) also were in attendance. (Doc. No. 33 at 7). Siudzinski gave Dailey a copy of the spreadsheet she created and Keiber informed him his employment with Accubuilt had been terminated for willful falsification of documents. (Doc. No. 35 at 3). Dailey requested the disciplinary action be amended from termination to a three-day suspension, but this request was denied. (Doc. No. 33 at 8).

---

[1] Dailey typically worked from 6:00 a.m. until 2:30 p.m. (Doc. No. 33 at 6).

3

On the same day, Dailey filed a grievance through his representatives at Local 975; Accubuilt denied Dailey's grievance on March 9, 2011. (Doc. No. 33 at 8). Dailey then "prepared his own spreadsheet with an accurate outline of the time it took for him to receive his therapy, which was submitted to Accubuilt by [Local 975] on March 16, 2011." (Id.). Dailey asserted Siudzinski failed to: (1) allot time for him "to change his clothes, [(2)] provide any time for a fifteen minutes break on the days he left during break time, [or (3)] provide[ ] [any] leeway for [his] wait at the therapy office to be seen, or for traffic or train holdups . . . ." (Id. at 7). After reviewing Dailey's spreadsheet and amending some of Siudzinski's calculations, Accubuilt upheld Dailey's termination. (Doc. No. 33 at 8). Local 975 informed Dailey on September 11, 2011, that it had declined to appeal his grievance through the arbitration process provided under the Collective Bargaining Agreement between Accubuilt and the union. (Id. at 9).

Subsequently, Dailey filed suit against Accubuilt and Local 975. He asserts claims for (1) violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*; (2) breach of the duty of fair representation, 29 U.S.C. § 151 *et seq.*; (3) breach of the collective bargaining agreement and violation of § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a); (4) age discrimination under Ohio law; (5) disability discrimination under Ohio law; (6) defamation; and (7) invasion of privacy.

## ANALYSIS

### A. FMLA CLAIM

Dailey concedes "his FMLA claims lack factual support as his time away from work was never coded as FMLA time and thus [he] respectfully withdraws those claims." (Doc. No. 33 at 16). I will treat Dailey's concession as a request for a court order dismissing the claim under Rule 41. Because Dailey concedes that even after discovery he has no evidence in support of this claim, Dailey's FMLA claim is dismissed with prejudice. *See* Fed. R. Civ. Pro. 41(a)(2).

4

B. AGE AND DISABILITY DISCRIMINATION

1. **Prima facie case**

Dailey asserts Accubuilt discriminated against him on the basis of his age and disability in violation of Ohio law. Dailey states "[y]ounger similarly situated employees were more favorably treated and remained in their positions . . . [and] his termination permitted the retention of significantly younger employees." (Doc. No. 1 at 6). Dailey also alleges Accubuilt terminated him "because of his disabling condition." (Id. at 7).

A plaintiff alleging employment discrimination may establish his claims either through direct or circumstantial evidence. *See, e.g., Balding Margolis v. Cleveland Arcade*, 352 F. App'x 35, 41 (6th Cir. 2009). Dailey does not present any direct evidence of discrimination. (*See* Doc. No. 28-1 at 12; Doc. No. 33 at 10).

The *McDonnell Douglas* burden-shifting apparatus applies to state-law discrimination claims that rely on circumstantial evidence. *Green v. Fidelity Inv.*, 374 F. App'x 573, 577 (6th Cir. 2010) (applying *McDonnell Douglas* framework to an Ohio law age discrimination claim); *Martin v. Licking Cnty Common Pleas Juvenile Div.*, 2:03-cv-867, 2005 U.S. Dist. LEXIS 9013, *12 (S.D. Ohio April 25, 2005) (applying *McDonnell Douglas* to an Ohio law disability discrimination claim (*citing Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 421 N.E.2d 128, 131 (Ohio 1981))). In order to establish a prima facie case of discrimination, a plaintiff typically must show he was "(1) a member of the protected class . . . ; (2) subject to adverse employment action; (3) qualified for the position; and (4) replaced by someone outside the protected class or treated differently from a similarly-situated employee outside the protected class." *Green*, 374 F. App'x at 577. There may be instances, however, "where there is so much evidence of a decision-maker's discriminatory animus that a plaintiff's failure to satisfy the fourth element of the *McDonnell Douglas prima facie* case is not fatal to [the plaintiff's] claim." *Birch v. Cuyahoga Cnty Probate Court*, 392 F.3d 151, 166 (6th Cir. 2004) (reasoning the Supreme Court in *McDonnell Douglas* "did not intend its discussion [of the prima facie

5

case] to limit the ways in which a plaintiff could establish a prima facie case" and concluding the "type of evidence [required by the fourth element of *McDonnell Douglas*] cannot, as a matter of logic, be a necessary part of the plaintiff's prima facie burden." (*quoting Brown v. Packaging Corp. of Am.*, 338 F.3d 586, 590 n.1 (6th Cir. 2003))).

It is uncontested that Dailey was a member of a protected class by virtue of his age and the disability he developed following a work-related injury, that he was subject to an adverse employment action, and that he was qualified for both the light duty and welding positions he held. Accubuilt asserts Dailey cannot establish a prima facie case because he "does not purport to have been replaced by a person outside of the protected class" and he does not identify "any similarly situated non-disabled or younger employees who were [not] terminated for the same conduct – falsification of records." (Doc. No. 28-1 at 13). Dailey counters he "does not necessarily have to prove that he was replaced in order to prove discrimination . . ." and asserts "there was no need to 'replace' him" because he was in a light duty position when terminated. (Doc. No. 33 at 11). Further, Dailey argues he may establish a prima facie case "with proof that his termination permitted the retention of substantially younger employees." (Id. at 10).

Dailey's argument that Accubuilt did not need to replace him because he was in a light duty position does not prevent him from presenting evidence he was treated differently from a similarly-situated employee or evidence that the behavior of Siudzinski or other Accubuilt managers was motivated by animus toward him. Dailey does not identify any similarly-situated but non-protected employees as comparators for either discrimination claim. "[T]o be deemed 'similarly-situated', the individuals with whom the plaintiff seeks to compare [his] treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992).

6

Dailey does not point to any Accubuilt employee who was accused of falsifying company records, much less identify any employee who was not terminated for such conduct.

Dailey claims that, had he returned to his position as a welder, "he would have bumped possibly either Kevin Ganell (30s), Jeffrey Sprag (approximately 29) or Mike Sloan (later 30s-early 40s)." (Doc. No. 33 at 12 n.6). Dailey does not offer any evidence to support the implication these employees replaced him after he was injured, or were able to retain their positions only through Dailey's termination. The mere facts that these individuals apparently were younger and worked in the same position as Dailey did before his work injury are insufficient to support a prima facie case for discrimination. "A person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work." *Balding-Margolis*, 352 F. App'x at 41; *see also Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1115 (6th Cir. 2001) (affirming district court's conclusion plaintiff failed to establish the fourth element of the prima facie case because plaintiff's claim that most of the employees retained after his discharge were not in a protected class did not constitute "evidence to suggest that the employment status of these [non-protected] workers would have changed even if [plaintiff] had not been discharged"). Further, there is no indication Dailey was able to return to his previous position from his light duty assignment, and thus no indication he would have forced Accubuilt to make any corresponding changes in the status of other employees.

Dailey asserts "there is at the very least a question of fact as to whether [he] was terminated because of his age or his disability" because "Siudzinski started looking into his therapy and timesheets when she realized how long he had been going to therapy . . . for a very serious injury." (Doc. No. 33 at 15). This argument falls far short of the volume and sufficiency of evidence the Sixth Circuit had in mind in *Birch*. Further, "the purpose of the prima facie burden is to 'eliminate[ ] the most common nondiscriminatory reasons' for the adverse action and raise an inference that the adverse action was motivated by discriminatory animus." *Birch*, 392 F.3d at 166 (*quoting Texas Dep't*

7

*of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981)). Siudzinski's alleged skepticism over the continued necessity of therapy does not supplant the factual predicate underlying the calculations she made during her investigation of Dailey's records.

I conclude Dailey has failed to establish a prima facie case of age or disability discrimination under the traditional *McDonnell Douglas* framework or the alternate route the Sixth Circuit described in *Birch* and *Brown*. Proof that Dailey was in a protected class, was subject to an adverse employment action, and was qualified for the positions he held is not sufficient to support the inferential leap necessary to conclude his termination violated Ohio anti-discrimination law. Dailey has failed to produce evidence sufficient to establish an essential element of his case, and on which he would bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322.

   **2. Pretext**

Accubuilt argues that, even assuming Dailey could establish a prima facie case, it has come forward with a legitimate nondiscriminatory explanation for Dailey's termination – that he "falsif[ied] company records in direct violation of company policy." (Doc. No. 28-1 at 14); s*ee Burdine*, 450 U.S. at 253. Accubuilt argues "[c]ourts have routinely held that dishonesty or fraud upon one's employer constitutes a legitimate, nondiscriminatory reason for discharging an employee." (Doc. No. 28-1 at 14). Further, Accubuilt asserts that even if Dailey denied falsifying entries on his time sheets, it still would be entitled to summary judgment "because it based [Dailey's] termination on its honest belief that he falsified records." (Id. at 15).

Dailey argues Accubuilt's proffered explanation is pretextual because it has no basis in fact, could not have been an honestly held belief, and did not motivate his termination. (Doc. No. 33 at 13). He asserts "Suidzinski fabricated a spreadsheet estimating her opinion of how long [he] should be away from work for his therapy . . . [and only] [i]ncluded . . . physical therapy time, a thirty minute lunch break, and 34 minutes total to drive to and from therapy." (Id.). Dailey claims Siudzinski "did not allot any time for [him] to change his clothes, provide any time for a fifteen minute break on the

8

days he left during break time, and provided no leeway for [his] wait at the therapy office to be seen, or for traffic or train holdups . . . ." (Id. at 14).

As Accubuilt notes, the Sixth Circuit has adopted "an 'honest belief' rule with regard to an employer's proffered reason for discharging an employee." *Majewski*, 274 F.3d at 1117 (*citing Smith v. Chrysler Corp.*, 155 F.3d 799, 806-07 (6th Cir. 1998)).

> [I]n order for an employer's proffered non-discriminatory basis for its employment action to be considered honestly held, the employer must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made. . . . Even if the employer is able to make such a showing, the protection afforded by the rule is not automatic . . . [as] the employee has the opportunity to produce proof to the contrary.

*Smith*, 155 F.3d at 807.

In adopting the honest belief rule, the Sixth Circuit stated the following:

> In deciding whether an employer reasonably relied on the particularized facts then before it, we do not require that the decisional process used by the employer be optimal or that it left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action. . . . . When the employee is able to produce sufficient evidence to establish that the employer failed to make a reasonably informed and considered decision before taking its adverse employment action, thereby making its decisional process "unworthy of credence," then any reliance placed by the employer in such a process cannot be said to be honestly held.

*Id.* at 807-08.

Since *Smith*, the Sixth Circuit has offered inconsistent interpretations for the honest belief rule. In *Majewski*, the court noted that the Supreme Court's decision in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000), permitted the plaintiff to "meet his burden of showing pretext by producing evidence that [the defendant's] proffered reason for his discharge was false," but then proceeded to proclaim that "as long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual **simply because it is ultimately shown to be incorrect**." *Majewski*, 274 F.3d at 1116-17 (emphasis added). "Furthermore," offered the court in *Seeger v. Cincinnati Bell Telephone Co., LLC*, 681 F.3d 274 (6th Cir. 2012), "the falsity of a defendant's reason for terminating

9

a plaintiff cannot establish pretext as a matter of law under the honest belief rule. . . . As long as the employer held an honest belief in its proffered reason, the employee cannot establish pretext even if the employer's reason is ultimately found to be mistaken, foolish, trivial, or baseless." *Id.* at 285-86 (internal citations and alterations omitted); *see also, Joostberns v. United Parcel Services, Inc.*, 166 F. App'x 783, 794 (6th Cir. 2006) (asserting that under the honest belief rule, "the falsity of Defendant's reason for terminating plaintiff cannot establish pretext as a matter of law.")

In *Smith*, however, the court rejected these lines of reasoning. The *Smith* court noted the Seventh Circuit's honest belief rule, which the Sixth Circuit modified and adopted, permitted an employer to defeat an employee's pretext argument by providing only "an honest reason for firing the employee, even if that reason had no factual support." *Smith*, 155 F.3d at 806. The court then **rejected** this portion of the Seventh Circuit rule, concluding "such an abstract application of the rule [was] at odds with the underlying purpose behind [the Americans with Disabilities Act]" and expressly required the employer present proof that it reasonably relied on the particularized facts before it, while also permitting the employee to show the employer's reliance was unreasonable. *Id.* at 806-07; *see also, Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 527 (6th Cir. 2008) (noting "summary judgment is not appropriate every time an employer offers this 'business judgment' rationale and that facts may exist from which a reasonable jury could conclude that the employer's 'business decision' was so lacking in merit as to call into question its genuineness." (internal quotations omitted) (*quoting Hartsel v. Keys*, 97 F.3d 795, 800 (6th Cir. 1996))). Moreover, the version of the honest belief rule stated in *Majewski* and similar cases directly conflicts with controlling Supreme Court precedent. *See Reeves*, 530 U.S. at 147 ("Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive."); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 517 (1993) ("proving the employer's reason false becomes part of (and often considerably assists) the greater enterprise of proving that the real reason was intentional discrimination").

10

Further, the frequency with which district courts have granted, and the Circuit has affirmed, summary judgment based on such an expansive view of the honest belief rule as proclaimed in *Majewski*, *Joostberns*, *Seeger*, and other cases is concerning. In the summary judgment stage, it is not appropriate for a judge to weigh the evidence presented; rather, a judge must determine whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The non-movant "need only present evidence from which a jury might return a verdict in his favor" in order to defeat a motion for summary judgment. *Id.* at 257. Affirming summary judgment against an employee because "[a]ll in all, the record reflects that [the defendant] made a reasonably informed and considered decision before terminating [the plaintiff]" impermissibly usurps the jury's well-established role and in effect converts the nonmovant-employee's burden from proving there is a genuine issue of material fact which would permit a reasonable jury to find in his favor to proving he is entitled to prevail. *See Seeger*, 681 F.3d at 287. As Judge Tarnow argued in dissent in *Seeger*,

> the court should look to determine whether sufficient evidence exists to permit a reasonable jury to find that the employer did not have an honest belief based on an investigation that is unworthy of credence. . . .Thus, whether the court finds that [the employer] made a reasonably informed and considered decision before terminating [the employee] is immaterial. The proper question is whether a reasonable jury could have concluded that [the employer's] investigation was "unworthy of credence."

*Seeger*, 681 F.3d at 288 (Tarnow, J., dissenting); *see also Mickey*, 516 F.3d at 527 (reversing district court grant of summary judgment and concluding a reasonable jury could determine the employer's claimed honest belief in its justification for terminating an employee was mere pretext when the reason had "little basis in fact").

Thus, in order to invoke the honest belief rule, Accubuilt first must produce evidence that it "reasonably relied on the particularized facts then before it" when it terminated Dailey. *Smith*, 155 F.3d at 807. Accubuilt has met its burden of production with a thorough description of Siudzinski's review and investigation of Dailey's time sheets. Accubuilt notes that Siudzinski: (1) reviewed Dailey's "workplace restrictions," his time sheets, and his medical records from the therapy office;

11

(2) contacted the therapy office to determine the length of each of Dailey's appointments; (3) estimated the amount of time Dailey spent commuting between Accubuilt and the therapy office, at therapy, and on his scheduled lunch break; and (4) provided a spreadsheet containing the data she compiled to Accubuilt's director of operations. (Doc. No. 42 at 4). Accubuilt asserts it reasonably relied on Siudzinski's investigation and the facts it uncovered in terminating Dailey.

Dailey then must produce evidence sufficient to permit a reasonable jury to conclude Accubuilt "failed to make a reasonably informed and considered decision before taking its adverse employment action," *Smith*, 155 F.3d at 807-08, and thereby "set[ting] forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. Dailey asserts (1) he never admitted intentionally entering a false time on his time sheet, (2) any issue with his time sheet "was purely a mistake," and (3) Siudzinski's calculations "provided no leeway" for a myriad of common delays Dailey experienced and which "influenced his time spent away from Accubuilt for therapy." (Doc. No. 33 at 14). Accubuilt argues in response that Dailey's "argument that Accubuilt did not give [him] enough credit for the 'actual' time it took him to get to and from therapy is irrelevant as to the four days on which he recorded that he was out for therapy but never even had therapy." (Doc. No. 42 at 5). While Dailey asserts he was unable to attend therapy on those days because of a problem with paperwork and spent some of that time attempting to resolve the problem, he admits he did not spend the entire block of time engaged in that activity. (Doc. No. 25 at 14-15).

Dailey also argues Siudzinski did not speak with him or John Phillips, an Accubuilt employee who signed off on Dailey's time sheets, prior to Dailey's termination. (Doc. No. 33 at 14). This broad statement fails to take into consideration Accubuilt's discussions with Dailey during the March 1, 2011, termination meeting or the changes Siudzinski made to her calculations based on the spreadsheet Dailey created and submitted. Further, the Sixth Circuit has instructed district courts not "to micro-manage the process used by employers in making their employment decisions" and

12

"do[es] not require that the decisional process used by the employer be optimal or that it left no stone unturned." *Smith*, 155 F.3d at 807.

Dailey fails to show Accubuilt's reliance on "the particularized facts at hand" was unreasonable. *Smith*, 155 F.3d at 808. Accubuilt's description of its investigation and decision-making process demonstrates it acted with diligence prior to terminating Dailey's employment. Dailey does not identify any errors in Accubuilt's investigation that would lead a reasonable jury to conclude Accubuilt's decision-making process is "unworthy of credence." *Reeves*, 530 U.S. at 147.

In a final salvo, Dailey argues "the accusation truly was that [he] was engaging in personal business on company time," which constitutes simple, rather than gross, misconduct. (Doc. No. 33 at 14). Thus, Dailey asserts, Accubuilt's contention that he falsified records "is patently false." (Id. at 15). Accubuilt states it "did not consider [Dailey's] misconduct to simply constitute 'unauthorized personal work on company time,'" and argues Dailey's "unsupported contention that Accubuilt applied the wrong policy to his misconduct is not evidence of pretext." (Doc. No. 42 at 6). As Accubuilt notes, "disputes about the interpretation of company policy do not typically create genuine issues of material fact regarding whether a company's stated reason for an adverse employment action is only a pretext designed to mask unlawful discrimination." *Sybrandt v. Home Depot, U.S.A., Inc.*, 560 F.3d 553 (6th Cir. 2009) (concluding the plaintiff "failed to highlight any material evidence suggesting that [the defendant's] stated reason for discharging her was a pretext designed to mask sex discrimination"). Dailey does not offer proof sufficient to identify a question of material fact as to whether Accubuilt's conclusion Dailey committed gross misconduct was merely pretext for discrimination.

Dailey fails to establish the existence of a genuine issue of material fact regarding whether Accubuilt had a legitimate, non-discriminatory reason for terminating him or as to Accubuilt's reasonable reliance on the particularized facts before it at the time Dailey was terminated. Accubuilt is entitled to summary judgment on Dailey's age and disability discrimination claims.

13

C.  **FAILURE TO ACCOMMODATE**

Dailey alleges his termination resulted from Accubuilt's failure to accommodate his need for time off for therapy. (Doc. No. 1 at 8). Accubuilt argues it provided Dailey "with paid time off, a light duty position within his medical restrictions for which he received the same pay and worked the same shift, and was given as much time off as he needed to attend physical therapy," and that Dailey admits "he was never denied any request he made in connection with his injury." (Doc. No. 28-1 at 16-17). Dailey contends "Accubuilt unilaterally decided that any therapy [he received must occur outside of] work hours, thus denying the accommodation [Accubuilt] had been providing him in the past for his work related injury." (Doc. No. 33 at 16).

Dailey has "the initial burden of proposing an accommodation and showing that *that* accommodation is objectively reasonable." *Brown v. Chase Brass & Copper Co., Inc.*, 14 F. App'x 482, 487 (6th Cir. 2001) (emphasis in original) (*quoting Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1183 (6th Cir. 1996)). Dailey and Accubuilt, at some time following Dailey's injury, agreed to the arrangement Accubuilt describes. Dailey does not offer any evidence that he protested Accubuilt's decision to no longer permit him to schedule his therapy appointments during work hours. Nor does he argue that this change in any way prevented him from working at Accubuilt in the same light duty position to which Accubuilt moved Dailey following his injury. The mere fact that Accubuilt decided to change a generous leave arrangement does not rise to the level of a failure to accommodate Dailey's disability. Dailey fails to demonstrate a genuine issue of material fact regarding whether Accubuilt failed to accommodate his disability. Accubuilt is entitled to summary judgment on this claim.

D.  **VIOLATION OF SECTION 301(A) OF THE LABOR MANAGEMENT RELATIONS ACT**

Dailey alleges Accubuilt breached the collective bargaining agreement between it and Local 975 by terminating him without just cause, and that Local 975 breached its duty of fair representation by failing to investigate the merits of his termination, failing to represent him during

14

his termination, and failing to pursue his grievance related to his termination. (Doc. No. 1 at 4-6). An employee may bring a § 301 action against his employer if the employee has been dismissed in violation of a collective bargaining agreement. *Alford v. General Motors Corp.*, 926 F.2d 528, 530 (6th Cir. 1991). If the collective bargaining agreement "contains exclusive and final procedures for the resolution of employee grievances, the employee will be prohibited from bringing an action under § 301 absent an allegation that his union breached its duty of fair representation." *Id.* at 531. In order to prevail on a § 301 claim, an employee must prove both that the employer breached the terms of the collective bargaining agreement and that the union breached its duty of fair representation. *White v. Detroit Edison Co.*, 472 F.3d 420, 425 (6th Cir. 2006). If Dailey fails to prove either part, neither Accubuilt nor Local 975 may be found liable. *See id.*

**1. Breach of Contract**

Accubuilt argues Dailey committed gross misconduct by falsifying entries on his time sheets and that the collective bargaining agreement permits termination in these circumstances. (Doc. No. 28-1 at 20). Dailey asserts he did not commit gross misconduct, and that if he violated any work rule, it was a simple misconduct rule, which invokes a five step review process rather than immediate termination. (Doc. No. 33 at 18). He also claims Accubuilt has failed to establish he "willfully falsified any documents, and thus termination for gross misconduct was unwarranted." (Id. at 17). Dailey asserts any issue relating to his time sheets "was purely a mistake." (Id.).

Disputes over the proper interpretation of a collective bargaining agreement should be resolved pursuant to the grievance and arbitration procedures set forth in the collective bargaining agreement. *See, e.g., United Steelworkers of Am. V. Warrior & Gulf Nav. Co.*, 363 U.S. 574 (1960). Rayl, president of Local 975, decided not to appeal Dailey's grievance through arbitration. (Doc. No. 33 at 9; Doc. No. 30-1 at 6). Thus, it is appropriate to consider whether Local 975 breached the duty of fair representation it owed to Dailey.

15

**2. Breach of the Duty of Fair Representation**

A union breaches its duty of fair representation if its actions are arbitrary, discriminatory, or in bad faith. *Air Line Pilots Ass'n, Intern. v. O'Neill*, 499 U.S. 65, 67 (1991). "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of 'reasonableness' as to be irrational." *Id.* (internal citations omitted). Dailey asserts Local 975 "arbitrarily left [his] defense up to him and blindly accepted [Accubuilt's] argument without question." (Doc. No. 33 at 19). Dailey argues he was "substantially prejudiced" when Local 975 "arbitrarily, and with no investigation of its own, left [him] to prepare his own defense through the grievance process and then failed to appeal the decision to arbitration before the deadline passed . . . ." (Id. at 20).

Rayl admitted that, prior to the termination hearing, he did not speak with anyone about the issues surrounding Dailey's time sheets or Dailey's light duty work assignment. (Doc. No. 27 at 5-6). Further, Rayl admitted he did not conduct an investigation into Accubuilt's allegations in processing Dailey's grievance. (Id. at 3).

This does not mean, however, that Rayl acted arbitrarily. He assisted Dailey in filing a grievance regarding his termination. (Doc. No. 33 at 8). He informed Dailey "he had to justify everything on [Siudzinski's] spreadsheet to clear" himself, and that the union could not investigate Dailey's therapy history because of HIPAA restrictions. (Doc. No. 27 at 3). Dailey prepared his own spreadsheet to explain the entries on his time sheets related to his therapy sessions and does not claim the union had access to any information he did not. Further, Dailey offers only the conclusory allegation that Local 975's failure to investigate his termination caused him harm. Even after discovery in this litigation, Dailey offers no evidence that might have been uncovered during a union investigation. *See Monroe v. Intern. Union UAW*, 540 F. Supp. 249, 254 (S.D. Ohio 1982) ("there must be a demonstration that the omission damaged the grievance presentation") (*quoting Findley v. Jones Motor Freight,* 639 F.2d 953, 959 (3rd Cir. 1981)).

16

Rayl also stated he did not believe Dailey adequately justified the entries on his time sheets, but "[a]bsolutely" would have gone to arbitration if he felt it was justified. (Id.). Rayl did not fail to timely pursue Dailey's grievance through arbitration. Instead, he made a reasoned judgment, based on the evidence Accubuilt presented during Dailey's termination hearing as well as the evidence and argument Dailey offered in response, that arbitration would not alter the outcome of Dailey's initial grievance. Dailey has not produced evidence that could permit a reasonable jury to conclude that Local 975's decision not to pursue his grievance through arbitration was "irrational." *Air Line Pilots Ass'n*, 499 U.S. at 67.

Dailey fails to demonstrate a genuine issue of material fact regarding his claim Local 975 breached its duty of fair representation. As a result, he may not prevail on his hybrid § 301 claim. Accubuilt and Local 975 are entitled to summary judgment on this claim.

### E. DEFAMATION

Dailey alleges Accubuilt defamed him by publicizing a statement that he falsified records. (Doc. No. 1 at 8). Accubuilt argues Dailey cannot prove the elements of defamation because (1) the alleged statement was true; (2) if Accubuilt published a statement, it was privileged; and (3) Accubuilt acted reasonably in attempting to determine the truth or falsity of the alleged statement. (Doc. No. 28-1 at 21-22).

In order to state a claim for defamation, a plaintiff must prove (1) a false statement; (2) unprivileged publication to a third party; (3) "fault amounting at least to negligence on the part of the publisher"; and (4) actionability or special harm caused by the statement. *Smith v. Bd. of Trustees Lakeland Cmty. College*, 746 F. Supp. 2d 877, 903 (N.D. Ohio 2010) (*quoting Harris v. Bornhorst*, 513 F.3d 503, 522 (6th Cir. 2008)).

Accubuilt argues in its reply brief that Dailey has not identified a specific statement as defamatory, but presumes for the purposes of its brief that the statement is "Plaintiff falsified records" as described in the Complaint. (Doc. No. 42 at 8-9). It appears the closest Dailey comes

17

to identifying a particular statement occurs when he argues "the statement that . . . Dailey falsified his time sheets was false." (Doc. No. 33 at 20). A plaintiff's failure to identify a false statement of fact prevents a reasonable jury from concluding a defendant is liable for defamation. *See Voyticky v. Village of Timberlake, Ohio*, 412 F.3d 669, 678 (6th Cir. 2005) (applying Ohio law and affirming summary judgment when the plaintiff "failed to place in the record any statements that Defendants published, much less any published statements that were false.").

Moreover, even if I assume Dailey's allegation that Accubuilt "publicized a statement that [Dailey] falsified records" is sufficient to constitute a statement of fact, Dailey does not demonstrate there is a genuine issue of material fact as to whether the statement was made negligently or with actual malice. As I concluded above, Accubuilt conducted a reasonable inquiry into Dailey's therapy attendance during work hours by speaking with the office of Dailey's therapist and by amending its calculations. Dailey fails to demonstrate that a reasonable jury could conclude Accubuilt is liable for defamation. Accubuilt is entitled to summary judgment on this claim.

F. INVASION OF PRIVACY AND FALSE LIGHT

Dailey alleges Accubuilt placed him in a false light and "wrongfully intruded into his private activities" by publicizing that Dailey falsified records. (Doc. No. 1 at 9). Accubuilt argues Dailey has not presented any evidence to establish the necessary elements of the numerous privacy torts he alludes to, including public disclosure of private facts, intrusion into seclusion, and false light. (Doc. No. 28-1 at 22). In his brief in response, Dailey addresses only "a claim for invasion of privacy for portrayal in a false light . . . ." (Doc. No. 33 at 22). Thus it appears Dailey no longer pursues claims for public disclosure of private facts or intrusion into seclusion. (*See* Doc. No. 42 at 10).

In recognizing the tort of false light invasion of privacy, the Supreme Court of Ohio identified two elements of the tort: (1) the false light in which the plaintiff was placed would be highly offensive to a reasonable person and (2) the defendant had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be

18

placed. *Welling v. Weinfeld*, 866 N.E.2d 1051, 1059 (Ohio 2007). As I noted above, Dailey fails to establish a genuine issue of material fact as to whether Accubuilt had knowledge of or acted in reckless disregard for the truth. Accubuilt is entitled to summary judgment on Dailey's false light claim.

## CONCLUSION

For the reasons stated above, the motions for summary judgment pursuant to Rule 56 of Accubuilt, (Doc. No. 28), and Local 975, (Doc. No. 30), are granted.

So Ordered.

                                                                                   s/ Jeffrey J. Helmick  
                                                                                   United States District Judge